1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ZARIKA SOMAYA,

        Plaintiff,

  v.

BANK OF INDIA,

        Defendant.

_____/

Nos. C12-4926 CRB

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
SUMMARY JUDGMENT**

    In December 1985, Jitu Somaya ("Jitu") placed $100,000 into a Foreign Currency Non-Resident ("FCNR") account with the Bank of India ("BOI") on behalf of his minor daughter Zarika Somaya ("Zarika"). Jitu opened the account at BOI's San Francisco Agency ("Agency"). Over 20 years later, in 2011, Jitu and Zarika were reminded of the FCNR account's existence when they found documents pertaining to the account's opening. Jitu contacted the Agency and requested payment. BOI informed Jitu, after an investigation, that in 1990 the FCNR account had been paid in full. BOI, however, could not confirm who requested the payment, or where the payment was made.

    Zarika, as the beneficiary of the FCNR account, filed suit in California State Court for breach of contract, money had and received, and breach of the implied covenant of good faith and fair dealings.[1] BOI properly removed the case. BOI now moves for summary judgment

---

[1] Jitu Somaya was dismissed as a plaintiff through a stipulated order entered on December 19, 2013. See Stipulation and Order Dismissing Jitu Somaya as Plaintiff (dkt. 45).

United States District Court
For the Northern District of California

1    or partial summary judgment.  The Court  DENIES BOI's motion for summary judgment as

2    to whether Zarika's claim is time-barred under Indian law, whether BOI properly paid-out

3    the FCNR account in 1990, and whether Zarika's damages are limited to only the FCNR

4    account's $179,080 maturity value.  The Court GRANTS BOI's partial motion for summary

5    judgment as to whether the Zarika can claim the FCNR account earned twelve percent

6    interest to the present.

7    **I.      BACKGROUND**

8         **A.      FCNR Accounts**[2]

9         FCNR accounts were established in 1975 to encourage[3] persons of Indian origin living

10   outside of India to send back foreign currency deposits, especially deposits in U.S. Dollars or

11   British Pounds.  Carapurcar Decl. ¶ 5.  The Royal Bank of India ("RBI") guaranteed that

12   FCNR account holders would be protected from exchange rate fluctuations by assuming the

13   risk of exchange rate fluctuations for participating Indian banks like BOI.  Id.  "RBI [also]

14   provided guidelines . . . with respect to opening, maintaining, and paying out" FCNR

15   accounts.[4]  Id.

16        Between 1985 and 1990, RBI established the following criteria to open an FCNR

17   account: (1) the depositor must have been a person of Indian origin who did not reside in

18   India; (2) the account was for a term not exceeding five years; and (3) the account "could not

19   pay interest after maturity."[5]  Id. ¶ 6.  "A depositor of Indian origin who wanted to establish

20   an FCNR account had to sign an application affirming his or her Indian origin and specifying

21

22

23   _____

24   [2] All general facts regarding FCNR accounts come from Sripad Sinai Carapurcar's declaration.
     See Carapurcar Decl. (dkt. 46-12) Ex. F.  Zarika disputes some of the facts, which are highlighted via
     footnote.

25

26   [3] Encouragement came from high interest rates, e.g. twelve percent in the case here.

27   [4] BOI refers to the RBI guidelines throughout its motion, however, BOI failed to provide a copy
     of the RBI guidelines to the Court.

28   [5] Jitu declared that he never received any documentation stating that no interest would be paid
     after maturity.  Jitu Decl. (dkt. 49-2) ¶ 6.

United States District Court
For the Northern District of California

the currency and desired term of the account."[6] Id.  Throughout the 1980s, all FCNR applications stated that "no claim will be made by me/us for any interest on the deposits for any period after the date of maturity of the deposits." Id.; see id. Ex. A.  In addition to the FCNR application, the depositor also had to provide the funds to be remitted to BOI. Carapurcar Decl. ¶ 7.  Once BOI accepted the remitted funds, it would send the depositor a remittance receipt and a fixed deposit receipt.  Id. ¶ 8.  The fixed deposit receipt listed the account's maturity date.  Id.  According to Carapurcar, because FNCR account depositors were required to be living outside of India, the fixed deposit receipt was the only notice of the account's maturity date that a depositor would ever receive since locating their domiciles could be difficult.  Id.

Once the maturity date was reached, a depositor could either withdraw the funds or affirmatively instruct BOI to renew the investment for a specified term at the prevailing interest rate.[7] Id. ¶ 12.  If the depositor chose not to withdraw the funds nor instruct BOI to reinvest the account, the "funds remained at the bank but did not earn interest pursuant to both the express terms of the FCNR account application and RBI policy."  Id. ¶ 10.

If the individual chose to withdraw the funds, he or she had to first establish his or her authority to do so, which usually entailed presenting the fixed deposit receipt.  Id. ¶ 9.  But if the fixed deposit receipt was lost, "the account holder could establish his or her authority to withdraw the funds by demonstrating to [BOI] that he or she was otherwise authorized to direct payment from the account."[8] Id.  If an FCNR account was opened on behalf of a

---

[6] Jitu disputes ever filling out an application.  Jitu Decl. ¶ 7.  Zarika also provides a declaration from the teller who signed Jitu up for the FCNR account declaring that he does not recall whether Jitu filled out an application or only submitted an application for remittance.  Rahmil Decl. (dkt. 49-3) Ex. A.

[7] Zarika contests the fact that a depositor had to affirmatively instruct BOI to renew the investment by relying on Jitu's declaration that he believed "under reinvestment scheme" meant that the account would automatically renew into another five-year period if the funds were not withdrawn by the maturity date.  Jitu Decl. ¶ 4.

[8] Whether Jitu's wife Veena Krishna ("Veena") had the ability and/or authority to possibly withdraw or re-direct the FCNR account funds is in dispute and central to this case.  BOI claims Veena could have established the authority to withdraw the funds as legal guardian of Zarika, even though Veena was not named on the FCNR receipt.  Mot. Summ. J. (dkt. 46) at 9-11 ("MSJ").  On the other hand, Zarika, with the support of Purigali  Prakash ("Prakash"), a banking expert, contends that "it

United States District Court
For the Northern District of California

1  minor beneficiary, a legal guardian of the beneficiary could withdraw FCNR funds after he

2  or she established his or her status as a legal guardian.  Id. ¶ 10.

3       After the account holder had established his or her authority to withdraw the funds,

4  he or she had to provide BOI with a bank account "into which the funds (in dollars) [should]

5  be wired."  Id. ¶ 13.  BOI would then provide instructions to its foreign correspondent bank

6  ("FC Bank") in New York as to which designated account to wire the funds.  Id.  The FC

7  Bank account was known as the "Nostro Account."  Id. ¶ 14.  BOI also maintained a "Mirror

8  Account Ledger" of the Nostro Account in its Mumbai office.  Id.  In the event of an FCNR

9  account withdraw, "the FC Bank wired payment to the account designated by the account

10 holder," and the "payment was reflected as a debit in the . . . Nostro Account . . . and as a

11 credit to the FC Bank in the Mirror Account Ledger."[9]  Id.  The Mirror Account Ledger

12 would also reflect any adjustments for exchange rate fluctuations, since RBI took on those

13 loses or gains.  Id.

14  **B.     Zarika's FCNR Account**

15       On December 23, 1985, Jitu visited BOI's San Francisco Agency and applied to open

16 an FCNR account in the amount of $100,000 on behalf of, and for the benefit of, his nine

17 year old daughter Zarika.[10]  MSJ at 5; Opp'n at 2.  Jitu submitted both an FCNR application[11]

18

19 would have been extremely difficult for someone not named on the FCNR receipt . . . to withdraw funds from the FCNR account."  Opp'n at 5; see Rahmil Decl. Ex. C.

20 [9] Whether Zarika's FCNR account was withdrawn at all, or withdrawn by an authorized
21 individual is at the heart of this dispute.  BOI provides evidence of a handwritten Mirror Account Ledger that seems to indicate the money in the account was transferred to some other account.  But BOI
22 provides no details or records of who requested the withdrawal, who authorized the withdrawal, and which account was designated to receive the funds.  See BOI Reply in Support of Mot. For Summ. J.
23 (dkt. 53) Ex. 2 ("Reply").  Zarika offers the sworn declarations of herself and her father Jitu declaring that neither one of them withdrew the funds.  See Zarika Decl. (dkt. 49-1) ¶ 8; Jitu Decl. ¶ 13.  Zarika
24 also provides the unsworn declaration of her deceased mother's sister, who declares that Veena did not withdraw the money.  Rahmil Decl. Ex. B.

25 [10] Jitu placed the account in Zarika's name to help her pay for her future wedding expenses.
26 Opp'n Mot. Summ. J. (dkt. 49) at 2 ("Opp'n").

27 [11] Jitu disputes BOI's claim that he filled out and submitted an FCNR application.  Jitu Decl. ¶ 7; Opp'n at 2.  In fact, Jitu states that "[t]here is no direct evidence that Jitu ever executed a FCNR
28 Application, he does not remember doing so, and the bank employee who dealt with him does not remember supplying him one, and has so testified in deposition."  Opp'n at 2; Rahmil Decl. Ex. B at 18:15–19:2, 20:4–11.  Moreover, Victor Joshi ("Joshi"), the BOI employee who opened Jitu's account

4

United States District Court
For the Northern District of California

and an application for remittance to BOI's Bombay Office in order to open the account.  MSJ at 5.  Pursuant to the application for remittance, the Agency remitted Jitu's $100,000 to the Bombay Office.  Id.  Jitu was sent back a fixed deposit receipt and a remittance receipt as record of his deposit.  Id.  None of the forms Jitu received in connection with the FCNR account "indicated that the FCNR account would cease accruing interest at maturity,"[12] nor did they contain a choice of law provision in the case of a dispute.  Jitu Decl. ¶¶ 5–6.

The fixed deposit receipt provided the following information: (1) the account was identified as "80/R/24;" (2) the account was "received from Ms. Zarika Somaya (Minor) D/B 30-3-76 Natural Guardian and Father Mr. Jitu Somaya[;]" (3) the account was for a term of sixty months (five years) at a twelve percent interest rate; (4) the account had a maturity date of Dec. 23, 1990; (5) the account would be worth $179,080 on the maturity date "under reinvestment scheme;"[13] and (6) the account was "not transferable."  See MSJ at 5; Opp'n at 2; Carapurcar Decl. Ex. F.

In 1986, Jitu's wife Veena and Zarika moved back to India.  MSJ at 6.  Jitu and Veena divorced in 1991, however, Jitu continued to financially support his ex-wife and Zarika from San Francisco.  Opp'n at 3; MSJ at 6.  Jitu was professionally successful in the U.S.; therefore, he was able to support himself and his family without needing to draw on the FCNR funds.  Jitu Decl. ¶ 8.  Sometime after 1992, while living in India, Veena mentioned to Zarika for the first and only time that Jitu had set aside money for her in the United States.  Zarika Decl. ¶ 4.  Zarika later understood that Veena was referring to the FCNR account.  Id.

---

in 1985, declared that he did not remember whether an FCNR application was required in addition to the remittance application, nor did he remember ever supplying Jitu with an application form to fill out. Rahmil Decl. Ex. B at 18:15–19:2, 20:4–11; Opp'n at 2.  BOI counters Joshi's declaration with Sripad Carapurcar's declaration as BOI's assistant general manager, who declared that all depositors between 1985 and 1990 looking to open an FCNR account had to fill out an FCNR application.  Carapurcar Decl. ¶ 6.

[12] BOI points to the FCNR account application as proof that Jitu had received a document indicating that the FCNR account would cease accruing interest after maturity.  MSJ at 6–7 n.6.

[13] The meaning of "under reinvestment scheme" is in dispute. Jitu understood the phrase to mean "that the deposit would automatically renew into another five-year period if the funds were not removed upon maturity and would thereby continue to accrue interest."  Jitu Decl. ¶ 4.  As discussed infra, Jitu's interpretation is inapposite.

United States District Court
For the Northern District of California

At the time of the comment, Zarika believed the money had not been withdrawn. Id. "Veena and Zarika continued to live in India until Veena died in 2005, after which Zarika" moved back to San Francisco in 2006 or 2007. Zarika Decl. ¶ 5. Zarika married in 2008. MSJ at 6.

Jitu never discussed the FCNR account with Zarika until one day in 2010, after Zarika had asked Jitu to find Veena's passport, Jitu discovered the FCNR account's fixed deposit receipt.[14] Id.; Jitu Decl. ¶ 9; Zarika Decl. ¶ 6. After being reminded of the FCNR account, Jitu realized that he had never withdrawn the funds. Jitu Decl. ¶ 13. Zarika also confirmed that she had "never withdr[awn] or received the money in the FCNR account." Zarika Decl. ¶ 8. Zarika further declared that she had no "memory or knowledge of [her] mother . . . withdrawing the money in the FCNR account," nor did she "believe that [her] mother would have withdrawn money that belonged to [her] without [her] knowledge or consent."[15] Id. ¶ 7. After confirming that no one had withdrawn the funds, Jitu contacted the Agency in 2011 requesting payment. MSJ at 6; Jitu Decl. ¶ ¶ 10, 13.

BOI originally had no record of the FCNR account. Jitu Decl. ¶ 11. For over a year, Jitu attempted to communicate with BOI regarding the FCNR account, but BOI persisted in telling him that "neither the San Francisco Branch, the New York office, nor the head office of the Bank in Mumbai had any record of the Account." Jitu Decl. ¶ 11. Jitu then retained counsel who wrote letters to the Agency that included copies of the fixed deposit receipt, the application for remittance, and the remittance receipt. MSJ at 6. The FNCR application,

---

[14] BOI takes issue with the contention that Jitu and Zarika never discussed the funds, pointing out that Veena not only told Zarika about the account in 1992, but Jitu opened the account to help pay for Zarika's wedding, which took place in 2008. MSJ at 6.

[15] Plaintiff also offers the statement of Veena's sister, Neena Garkal ("Neena"), in support of the contention that Veena did not withdraw the funds. See Rahmil Decl. Ex. B. BOI objects to the Neena declaration in full because it was not executed under penalty of perjury. Reply at 5 n.4. BOI also claims that the declaration is filled with inconsistencies and does not help Zarika establish "a triable issue with respect to non-payment." Id. Zarika, in opposition to this motion, states that Neena would testify at trial as to what she proclaimed in her declaration, and moreover, there are "[d]ocuments relating to a tax audit Veena underwent before her death" that would confirm Neena's declaration, and thus confirm that Veena never withdrew the funds. Opp'n at 3.

6

United States District Court
For the Northern District of California

1   which BOI claims was required to open the FCNR account, but which Jitu claims he never

2   filled out, was not included.[16]  <u>Id.</u>

3          After Jitu  presented the fixed deposit receipt to BOI, which proved the existence of

4   the account, BOI undertook an investigation to determine what happened to the FCNR

5   account.  <u>Id.</u> at 7.  Even though BOI's document retention policy only required documents to

6   be retained for eight years, BOI nevertheless found hundreds of pages of handwritten Mirror

7   Account Ledgers for the year 1990 through 1991 in a Mumbai[17] warehouse.  <u>Id.</u>  According

8   to BOI, entries on two pages of those ledgers pertained to Zarika's FCNR account.[18]  MSJ at

9   7; <u>see</u> Reply Ex. 2.  The first page reflected a payment of $179,080 from account 80/R/24 on

10  December 27, 1990, and a credit of $179,080 to the FC Bank "as a result of the FC Bank's

11  payment to the account holder on behalf of [BOI]."  Carapurcar Decl. ¶ 18; Reply Ex. 2.  The

12  first page also listed the "tested telex" number "by which the Bombay Office instructed the

13  FC Bank to pay the proceeds of the . . . FCNR Account to a designated bank account."

14  Carapurcar Decl. ¶ 18; Reply Ex. 2.  BOI, however, has no record from the FC Bank as to

15  what account the FCNR account funds were paid.[19]  MSJ at 7 n.7.  The second page reflected

16  the adjustments made as a result of exchange rate fluctuations related to the $179,080

17  payment.  Carapurcar Decl. ¶ 19; Reply Ex. 2.  BOI contends that such entries would have

18

19      [16] BOI was unable to produce a copy of Jitu's FCNR application, because pursuant to its
    document retention policy, it was destroyed.  MSJ at 7 n.6.

20      [17] Note that the city of Bombay officially became the city of Mumbai in 1995.

21      [18] Zarika disputes the legitimacy of BOI's Mirror Account Ledger by stating:

22      [T]he Bank has not established as a threshold matter that the cryptic "ledger" it produced is
    evidence that the FCNR account was paid, let alone that it was paid to anyone acting for the benefit of

23  Zarika. According to the Bank, the ledger indicates that $179,080 was transferred somewhere a few days
    after Zarika's FCNR account reached maturity. There is no declaration from the person who created the

24  ledger, nor is there a declaration from any contemporaneous Bank employee to support the alleged
    withdrawal. The ledger does not indicate anything beyond the accounting entry of a transfer: that the

25  money left one of the Bank's accounts, perhaps remaining in another. The fact of a transfer of the money
    in the FCNR account does not imply that Zarika or anyone acting on her behalf received any funds.

26
        Opp'n at 4–5.

27

28      [19] BOI explains that it does not have record of the final account because the payment took place
    more than 20 years ago.  MSJ at 7 n.7.

1

2

3   only been made if a legal guardian of the beneficiary authorized the payment of the FCNR

4   account funds into another account.  Carapurcar Decl. ¶ 18.  Finally, BOI points out that in

5   1993 all remaining FCNR accounts were transferred to the Mumbai NRI Branch, yet that

6   branch has no record of Zarika's FCNR account.  Id. ¶ 20.

7   **II.     LEGAL STANDARD**

8          The Court shall grant summary judgment if the movant shows that there is no genuine

9   dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.

10  R. Civ. P. 56(a).  An issue is "genuine" only if there is a sufficient evidentiary basis on which

11  a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only

12  if it could affect the outcome of the suit under governing law.  See Anderson v. Liberty

13  Lobby, Inc., 477 U.S. 242, 248-49 (1986).  The burden is on the moving party to demonstrate

14  that there is no genuine dispute with respect to any material fact and that it is entitled to

15  judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A court

16  must view the evidence in the light most favorable to the non-moving party and draw all

17  justifiable inferences in its favor.  Anderson, 477 U.S. at 255.  "Where the record taken as a

18  whole could not lead a rational trier of fact to find for the non-moving party, there is no

19  'genuine issue for trial.'"  Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587

20  (1986).

21  **III.    DISCUSSION**

22         **A.     California Law Governs Zarika's Timely**

23         The threshold issue before the Court is whether Zarika's claim is governed by the law

24  of India or the law of California.  California Code of Civil Procedure section 361,

25  California's "borrowing statute," determines which forum's laws apply based on where the

26  claim arose.  Although BOI is located in India, because Zarika was located in California

27  when BOI denied her and Jitu's request for payment on the FCNR account, Zarika's claim

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3   arose in California and is subject to California law.  As such, her claim is not subject to any

4   statute of limitation.  <u>See</u> Cal. Civ. Proc. Code § 348.

5         BOI argues that Zarika's claims arose in India, thus India's limitations laws apply

6   under the borrowing statute.  MSJ at 11.  Section 361 states:

7         When a cause of action has arisen in . . . a foreign country, and by the laws thereof an

8         action thereon cannot there be maintained against a person by reason of the lapse of

9         time, an action thereon shall not be maintained against him in this State, except in

10        favor of one who has been a citizen of this State, and who has held the cause of action

11        from the time it accrued.

12  <u>Id.</u>  In other words, if a claim arose in a forum other than California, and is time-barred in

13  that forum, a plaintiff cannot avoid that time-bar by now bringing the claim in California.

14  That is so, because the borrowing statute requires adoption of the statute of limitations from

15  the forum where the claim arose.  <u>See</u> <u>Cossman v. DaimlerChrysler Corp.</u>, 133 Cal. Rptr. 2d

16  376, 380 (Cal. App. Ct. 2003).  Thus, if Zarika's claim arose in India, then the limitation

17  laws of India would apply, which BOI argues would bar Zarika's claim.[20]  MSJ at 12-16.

18  BOI's argument that Zarika's claim arose in India, however, is incorrect.

19        In its motion, BOI relies on <u>McKee v. Dodd</u>, 93 P. 854 (Cal. 1908), arguing that

20  California courts would hold that Zarika's breach of contract claim arose in India.  MSJ at

21  13.  In <u>McKee</u>, the California Supreme Court, through section 361, applied New York law to

22  the plaintiff's breach of contract claim holding that the claim arose "where the note [was]

23  payable and [where] the payee reside[d]," both of those places being New York.  <u>Id.</u> at 856.

24  BOI misinterpreted the holding, asserting that because BOI's "payment was made <u>from</u>

25  India," Zarika's claim arose in India.  MSJ at 13 (emphasis added).  In fact, <u>McKee</u>

26  _____

27         [20] The parties disagree about how Indian limitation law would be applied to this case.  MSJ at
    14-16; Opp'n at 9 n.2.  But because the Court holds that California Law and not Indian Law controls

28  this case, the analysis of Indian limitations law is unnecessary.

**United States District Court**
For the Northern District of California

demonstrates that Zarika's claim arose in California. Correctly applying the case's holding,

the FCNR account was payable in California, where Zarika and Jitu lived when they sought

payment, and Zarika, the payee, resided in California. Therefore, Zarika's claim arose in

California, and section 361 does not require the Court to borrow India's limitations law;

rather the Court applies California's limitations law. See also W. Coat & Min. Co. v. Jones,

167 P.2d 719 (Cal. 1946) (holding that a contract claim arose in the state where the contract

was payable); Chang v. Baxter Healthcare Corp, 599 F.3d 728, 733-34 (7th Cir. 2010)

(interpreting California Code of Civil Procedure section 361's language to mean that a cause

of action arose where the injury occurred). And under California Code of Civil Procedure

§ 348, "[t]o action[s] brought to recover money or other property deposited with any bank . .

. there is no limitation."[21] Id. Therefore, Zarika's claim is not time-barred.[22]

Thus, the Court DENIES BOI's motion for summary judgment on the threshold issue

of whether Zarika's claim is time-barred.

### B. A Reasonable Jury Could Find That BOI Never Paid Out Zarika's FCNR Account To An Authorized Individual

The Court next addresses whether BOI's central contention, that it paid out the FCNR

account to an authorized beneficiary in 1990, contains triable issues of fact. Both parties in

this case produce some evidence supporting their claims that either the FCNR account was

paid or unpaid. That said, BOI, as the moving party and defendant without the ultimate

burden of persuasion at trial, carries the "initial burden of production and the ultimate burden

---

[21] Section 348 applies to actions to recover money from foreign banks like BOI. See Huynh v. Chase Manhatten Bank, 465 F.3d 992 (9th Cir. 2006) (noting that if plaintiff's claims against Vietnamese banks were analyzed under CA law, then section 348's no limitation rule would apply); see also Deirmenjian v. Deutsche Bank AG, No. 10-56359, — Fed. Appx. — 2013 WL 6407025 (9th Cir. Dec. 9, 2013) (acknowledging that section 348 would apply to plaintiff's claim against Turkish bank, however, after section 361 analysis, Turkish law applied to the case).

[22] Furthermore, even if Zarika's claim arose in India, she still meets section 361's only exception—if Zarika was a citizen of California at the time her claim accrued then the borrowing statute does not apply. Civ. Code § 361. At the February 28, 2014 hearing, BOI urged the court to re-examine Huynh v. Chase Manhattan Bank, 465 F.3d 992, 998 (9th Cir. 2006), which BOI argued stood for the contention that Zarika's claim would be barred if the timing of her demand was unreasonable. MSJ at 16-18. BOI's interpretation is misguided. Huynh, rather, expresses a way to determine when a cause of action has accrued under section 361. Huynh, 465 F.3d at 999-1000. The case does not create a claim bar based solely on reasonableness. The accrual date is then used to determine if the party meets section 361's exception.

of persuasion on a motion for summary judgment." <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  Therefore, even though neither party presents conclusive evidence, BOI fails to meet its ultimate burden at this stage.

      To meet its initial burden of production, BOI "must either produce evidence negating an essential element of [Zarika's] claim . . . or show that" Zarika has insufficient evidence of an essential element of her claim to carry her burden of persuasion at trial. <u>Id.</u>  To meet its ultimate burden of persuasion, BOI "must persuade th[is] [C]ourt that there is no genuine issue of material fact." <u>Id.</u>  Therefore, if BOI meets its burden of production, Zarika "must produce enough evidence to create a genuine issue of material fact," otherwise BOI wins the motion. <u>Id.</u> at 1103.

      BOI argues that there is no triable issue of fact related to whether the FCNR account was paid out in December 1990.  In so arguing, BOI relies exclusively on the analysis and holding in <u>Gabriel v. Wells Fargo Bank, N.A.</u>, 115 Cal. Rpt. 3d 622 (Cal. Ct. App. 2010), a California state court case applying the California summary judgment burden.  <u>See</u> <u>Gabriel</u>, 115 Cal. Rpt. 3d at 626 (quoting the summary judgment standard as set forth by the California Supreme Court in <u>Aguilar v. Atlantic Richfield Co.</u>, 23 P.3d 493 (Cal. 2001)). Following the analysis in <u>Gabriel</u>, BOI states that "[t]o defeat summary judgment, Zarika must <u>prove</u> that her mother did not authorize payment of the FCNR account 15 years prior to her death."  MSJ at 9 (emphasis added); <u>see also</u> MSJ at 10 ("Because plaintiff [in <u>Gabriel</u>] was unable to <u>prove</u> an essential element of her claim . . . summary judgment was granted."). In a diversity case, a federal court applies state substantive law, but federal procedural law. <u>See</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938).  The federal summary judgment standard is procedural, therefore it controls in a diversity case in federal court.  <u>Gasaway v. Nw. Mut. Life Ins. Co.</u>, 26 F.3d 957, 960 (9th Cir. 1994) ("In diversity cases, procedural issues related to summary judgment are controlled by federal law."); <u>Caesar Elec. Inc. v. Andrews</u>, 905 F.2d 287, 289 n.3 (9th Cir. 1990) ("[U]nder the <u>Erie</u> doctrine, federal law governs the procedural aspects of summary judgment in a diversity case . . . .").  Thus, because <u>Gabriel</u> applied California's summary judgment standard, which differs from the

United States District Court
For the Northern District of California

1    federal standard, BOI's reliance on the case was misguided.  See Gabriel, 115 Cal. Rpt. 3d at

2    553, 553 n.3.  Here, Zarika need only present enough evidence to create a genuine dispute of

3    material fact.[23]

4           In support of its motion here, BOI presents three primary pieces of evidence: (1) two

5    photocopied pages from handwritten Mirror Account ledgers found in a Mumbai warehouse

6    that covered the period from the end of 1990 until June 1991;[24] (2) declaration of Sripad

7    Sinai Carapurcar, BOI's Assistant General Manager;[25] and (3) declaration of Pramod Kumar

8    Bathal, Vice President and Manager of the BOI's San Francisco Agency.  In opposition to

9    the motion, Zarika presents the following evidence: (1) declaration of Zarika Somaya;[26] (2)

---

[23] Gabriel is not dispositive of this motion.  That said, beyond BOI's improper reliance on the case's summary judgment standard, in its papers and at the February 28, 2014 hearing, BOI urged that Gabriel's facts are instructive to the case here.  Although Gabriel's facts are somewhat analogous, central factual and evidentiary distinctions exist which prevent Gabriel from persuading the Court's holding.

[24] BOI argues that the ledger is proof positive that the FCNR account was paid out to an authorized individual on Dec. 27, 1990.  Even assuming the ledger is proof of payment, BOI provides no record identifying which account allegedly received the funds, nor any record as to the identity of the individual who instigated the transaction.  Instead, BOI relies completely on its own credibility, stating matter-of-factly that the entries in the ledger "would only have been made . . . if [BOI] had received authorized instructions from one of Zarika's legal guardians to pay the proceeds from the FCNR Account into the designated account."  MSJ at 8.  Even if BOI paid out the FCNR account, BOI's conclusory statement does not dispel any genuine dispute of material fact as to whether they paid out the FCNR account to an authorized individual.

[25] Carapurcar started working for BOI in 1990 as the manager of a small branch in Nagpur, India. Carapurcar Decl. at 2.  It was not until 2010 that he started as Chief Manager of the Mumbai NRI Branch that deals with deposits of non-resident Indians.  Id.  Therefore, the credibility of Carapurcar as a witness testifying about the particular practices of BOI before he began working there, and long before he had any experience dealing with FCNR accounts, will be a major trial question that is not ripe for adjudication on summary judgment.

[26] Zarika's declaration, in essence, confirms that she never withdrew the FCNR funds.  Zarika Decl. ¶ 8.

United States District Court
For the Northern District of California

declaration of Jitu Somaya;[27] (3) declaration of Neena Garkal, Veena Somaya's sister;[28] (4) an excerpt of the deposition of Victor Joshi, the BOI employee who helped Jitu open the FCNR account; (5) expert witness disclosure of Purigali K. Prakash, a banking expert;[29] and (6) an excerpt of the deposition of Purigali K. Prakash.

BOI's evidence is contested by Zarika. She presents significant evidence that no authorized party ever withdrew the FCNR account funds. Both the FCNR account creator (Jitu) and the FCNR account's beneficiary (Zarika), the only two individuals expressly authorized to withdraw from the FCNR account, are alive and have declared under oath to not withdrawing the funds. See Zarika Decl. ¶ 8; Jitu Decl. ¶ 13. BOI's entire argument hinges on whether Veena could have withdrawn the FCNR account funds on her own, a fact that is in clear dispute.

Lastly, and principally, the value of much of the evidence on both sides comes down to credibility. This is especially true when neither party presents particularly strong evidence. Thus, whether the handwritten ledger is believable and dispositive falls on credibility; whether Carapurcar's testimony is valuable when it is regarding BOI's practices from a time before he worked there falls on credibility; and finally the weight of Zarika, Jitu, and Neena Garkal's testimony also falls on credibility. Credibility is a determination that lies squarely within the providence of a jury. See Hochhalter v. Stephens Group, Inc., 276 F. App'x 683, 684 (9th Cir. 2008) ("The credibility and weight of [] evidence are questions for

---

[27] Jitu's declaration, similar to Zarika's, confirms that he never withdrew the FCNR funds. Jitu Decl. ¶ 13.

[28] Neena Garkal's declaration supports Zarika's claim that Veena never withdrew the FCNR funds. Rahmil Decl. Ex. B. BOI argues that Garkal's declaration was not conducted under oath. Reply at 5 n.4. Because Zarika states Garkal will testify at trial the authority of the declaration is inapposite. Opp'n at 5.

[29] One of Zarika's main arguments is that Veena was not named on the fixed deposit receipt, nor anywhere else on the account, therefore Veena did not have the authority and thus the ability to withdraw the FCNR account funds even if she wanted to. Prakash's declaration, inter alia, supports Zarika's argument. Rahmil Decl. Ex. C.

13

a jury."). Therefore, BOI did not meet its ultimate burden of persuasion—proving there was no genuine dispute of material fact.

Thus, the Court DENIES BOI's motion for summary judgment as to whether BOI paid out the FCNR account to an authorized beneficiary in 1990.

### C.   The FCNR Account Did Not Accrue Interest At Twelve Percent Ad Infinitum.

Zarika prays for over $2 million in damages, which includes the FCNR account's principal sum of $179,080.00 plus interest on the principal sum at the rate of twelve percent per year beginning in 1990. See Notice of Removal (dkt. 1) Ex. A (copy of Zarika's complaint). Because BOI presents persuasive evidence that Jitu was required to fill out an FCNR application that stated no interest would be earned on the FCNR account past the date of maturity absent renewal at a new rate, and Zarika failed to present convincing counter evidence to create a triable issue of fact, the Court GRANTS BOI's motion for partial summary judgment.

At the summary judgment stage, the Court's "function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249 (1986). An issue for trial exists if the opposing party presents sufficient evidence for a jury to return a verdict in the party's favor. Id. But "[i]f the evidence is merely colorable, [citation], or is not significantly probative, [citation], summary judgment may be granted." Id. at 249-50. Moreover, a party cannot rest on its allegations "to get to a jury without any significant probative evidence tending to support the complaint." See id. at 249 (internal quotation marks omitted) (citation omitted).

Whether there is a triable issue as to whether BOI owed Zarika twelve percent interest for the life of the FCNR account primarily hinges on one fact—whether Jitu filled out an FCNR application when he opened the FCNR account in 1985. FCNR applications, in addition to certifying that the depositor was of Indian origin, also stipulated that the depositor

14

United States District Court
For the Northern District of California

1   would not make any claim for interest for any period beyond the maturity date of the FCNR

2   account.  See Carapurcar Decl. ¶ 6.  Zarika contends that Jitu never saw nor filled out an

3   FCNR application when he opened the account.  Opp'n at 13.  Zarika claims instead that the

4   statement "under reinvestment scheme" located on the fixed deposit receipt received by Jitu

5   after opening the FCNR account controls the issue of interest in this case.  Id.  For the

6   following reasons, the Court disagrees with Zarika.

7        BOI, in its moving papers, explained that because RBI protected all Indian banks

8   offering FCNR accounts from exchange rate fluctuations, "RBI required [] banks to get

9   confirmation from depositors that they would not seek interest after the accounts matured."

10  MSJ at 18; Carapurcar Decl. ¶ ¶ 5-6.  To comply, all "[BOI] FCNR applications throughout

11  the 1980s provided that 'no claim will be made by me/us for any interest on the deposits for

12  any period after the date of maturity of the deposits.'"  Carapurcar Decl. ¶ 6 (quoting

13  Carapurcar Decl. Exs. A, B, C, D).  BOI does not have record of Jitu's actual FCNR

14  application.  But BOI did produce copies of two FCNR applications from 1982 and 1991,

15  plus a sample application in a BOI manual from 1985, which all contained the same interest

16  disclaiming language.  See Carapurcar Decl. Exs. A, B, C, D.  Zarika does not contest the

17  accuracy of BOI's application exemplars.  Thus, BOI has shown that there is no genuine

18  dispute of fact that if Jitu filled out an FCNR application, it contained the above operative

19  language.

20       In opposition to the motion, Zarika claims that Jitu never executed an FCNR

21  application.  Opp'n at 13.  For the most part, her argument relies on Jitu's declaration that he

22  "does not recall doing so."  Id. (quoting Jitu Decl. ¶ 7).  To support Jitu's statement,

23  however, Zarika also offered an excerpt of Victor Joshi's declaration—the BOI employee

24  who opened Jitu's FCNR account in 1985.  Opp'n at 13.  In response to a question as to

25  whether the FCNR application was used in addition to the application for remittance, Joshi

26  responded "I don't recall if we were having another form signed by customer (sic)."  Rahmil

27  Decl. Ex. A at 20:6-11.

28       Countering Zarika's claim that Jitu only filled out an application for remittance and

not an FCNR application, BOI provided testimony by both Zarika's expert Purigali Prakash and Victor Joshi sufficiently proving that an application for remittance would have been inadequate on its own to open an FCNR account.  MSJ Ex. 9 at 42:7-43:16, Ex. 10 at 33:12-43:8.  Furthermore, the following exchange occurred in Prakash's deposition after he was shown the example FCNR application from 1985:

> Q. Is this the type of application that would have been required to an open an [FCNR] account?
> A. Yes.  And different banks use slightly different forms, but, yes.  In general, yes.

BOI's evidence provides sufficient proof that Jitu had to fill out an FCNR application when the FCNR account was opened in 1985.  BOI's evidence also provides sufficient proof that the FCNR application Jitu filled out disclaimed any interest on the account beyond the date of maturity absent renewal at a new rate.  Zarika's reliance on Jitu's declaration that he did not recall filling out an FCNR application, and Joshi's speculation as to whether he was required to give Jitu an FCNR application, attempts to create a dispute where the overwhelming evidence shows that there is none.[30]  See Anderson, 477 U.S. at 247-48 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .").  Thus, the Court GRANTS BOI's partial motion for summary judgment as to whether the FCNR account earned twelve percent beyond the FCNR account's maturity date.

### D.   Zarika's Possible Damages Are Not Limited To $179,080 Plus Prejudgment Interest

The issue before the Court is whether a triable issue exists as to whether Zarika's possible damages are limited to only $179,080 plus prejudgment interest.  As previously

---

[30]Zarika also argued in her opposition that partial summary judgment was improper because the FCNR application language disclaiming any claim on the interest after maturity was inconsistent with Jitu's understanding of the phrase "under reinvestment scheme" found on the fixed deposit receipt. Opp'n at 13.  BOI points out that first of all, the phrase "under reinvestment scheme" appeared only on the fixed deposit receipt, a document Jitu received after he already entering into the contract.  Reply at 12.  Thus, Jitu's personal understanding of that phrase is not germane to the language found on the FCNR application, which was filled out when the contract was entered.  Furthermore, in the example FCNR application from 1985, the application provided three options for what to do with the interest earned on the account, either reinvest, remit, or other standing instruction. Carapurcar Decl. Ex. D.  In light of BOI's arguments and evidence, Jitu's personal interpretation of the phrase "under reinvestment scheme" does not create a triable issue of fact that should be left to a jury.

16

United States District Court
For the Northern District of California

1  explained, BOI puts forth evidence that Zarika cannot claim the FCNR account earned

2  twelve percent interest over the entire life of the account beyond the 1990 maturity date.

3  Zarika, however, clarified at her February 28, 2014 hearing that she also alleges that once the

4  FCNR account reached maturity, the account was set up to automatically renew for the same

5  time period (five years), but at the then prevailing market interest rate.

6          Zarika's expert, Purigali Prakash, declared that "[i]f an FCNR account was not

7  withdrawn or renewed by the depositor upon maturity, I believe that it is and was the policy

8  of Indian banks to continue paying interest on the account as if it had been renewed for an

9  additional term." Rahmil Decl. Ex. C at ¶ 10. Prakash further stated that "[i]t would not be

10  acceptable practice for the bank . . . to retain the benefit of the use of the depositor's money

11  without paying periodic interest for the period held." Id. BOI presented no evidence that the

12  FCNR account would not automatically renew for another five year term at the then

13  prevailing market interest rate. Nor did BOI present evidence that the FCNR account would

14  sit interest free until the FCNR account holder either actively renewed the FCNR account for

15  another five years or withdrew the money. Zarika's claim is plausible, thus she has shown

16  that there is a triable issue of fact as to that issue.

17          Thus, the Court DENIES BOI's motion for partial summary judgment limiting

18  Zarika's damages to only the FCNR account's $179,080 maturity value plus prejudgment

19  interest. The Court, however, denies the motion without prejudice. Thus, BOI may re-file its

20  motion with evidence showing that if the FCNR account holder did not renew or withdraw

21  the FCNR account after the first maturity date, the FCNR account would sit interest free until

22  it was withdrawn.

23         **E.     Zarika's Right To Prejudgment Interest Is Unaffected By This Order**

24          No issue related to the specifics of prejudgment interest is before the Court. As such,

25  this Order has no impact on Zarika's right to prejudgment interest. See Cal. Civil Code

26  § 3287 et seq.[31]

---

27

28         [31] Zarika's claim for prejudgment interest pursuant to California Civil Code section 3287 et seq. is not impacted by the granting of BOI's partial motion for summary judgment. BOI does not contest Zarika's claim. Reply at 2 ("Plaintiff's claim is limited to the matured $179,080 value (plus

## IV.    CONCLUSION

The Court DENIES BOI's motion for summary judgment on the threshold issue of whether Zarika's claim is time-barred, and as to whether BOI ever paid out the FCNR account to an authorized beneficiary with prejudice.

The Court GRANTS BOI's motion for partial summary judgment as to whether the FCNR account earned twelve percent interest beyond its 1990 maturity date.

The Court DENIES BOI's motion for partial summary judgment limiting Zarika's damages to the FCNR account's $179,080 maturity value plus prejudgment interest without prejudice.

**IT IS SO ORDERED.**

Dated: March 5, 2014

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

_____
prejudgment interest pursuant to [California] Civil Code section 3287 et[] seq[.]).").

18